We'll hear the next case, Brandon v. Schroyer. May it please the court, Jessica Garasino, Seton Hall Law School's Center for Social Justice on behalf of plaintiff appellant Chama K. Brandon. In a moment my co-counsel Allison Thompson will address the retaliation issue. First I will address the denial of Brandon's religious meals. It is not disputed that Brandon did not receive any religiously appropriate meals from the court on December 27, 2012, resulting in at least seven months of his denial of religiously appropriate meals, totaling at least 63 meals that contained pork. And the 63 meals wasn't specifically pled, was it? It was just meals. And he gave 10 examples. Is that right? Correct, Your Honor. Okay. But do you think it's sufficiently in the case? Yes, Your Honor. As far as that's concerned? Yes, Your Honor. Reading the record in its best possible light, Brandon, in addition to stating 10 specific meals that he received that contained pork products, also repeatedly stated in the record How is the 63 derived? Is that just going back and looking at the records of when they served pork during that period of time? Yes, Your Honor. The jail menus do serve to And everybody gets the same meal? Yes, Your Honor. And in addition, Brandon stated in his verified complaint and in the record below multiple times that he was routinely and continuously denied his religiously appropriate meals, including the entire holy month of Ramadan, which the district court, the magistrate judge failed to recognize below when stating what specific instances totaled to that 10 religious meals. So there's a lot of debate and confusion in the record as to when the kitchen really finally knew about this. But you say that's all irrelevant because he was designated a Muslim right away when he came in. And so once the prison knew about that, it didn't matter whether the kitchen knew, the prison knew. And therefore, he had his right to his meals. Correct, Your Honor. Actually, you might argue that the fact that the kitchen didn't know supports his affidavit that it was more than merely 10, because if a kitchen didn't know, it could have been any number of times. So that oddly, the lack of knowledge in the kitchen makes the affidavit more plausible. Yes, Your Honor. And also there is a material dispute of fact as to when the kitchen was aware. There is evidence in the record supporting that March 2nd was the date that the kitchen was made aware by the booking of Brandon into Clinton County Jail and also in Bedard's own affidavits. I'm curious. Would you also be arguing that 10 would be enough? Yes, Your Honor. Even if it was limited to only 10 meals. The question with 10 is whether there would be qualified immunity, because we haven't specifically held that something so low would be. So that while a larger number is in the 60s, would clearly be a violation and qualified immunity wouldn't apply. If it really were as low as 10, that might be a question. Your Honor, even if this court were to find that it was only 10 meals on the record, that would still be a substantial burden. Looking at this court's precedent in cases such as Ford and McEachin, even one meal is sufficient to rise the level of a substantial. If we were to agree with you that 10 is sufficiently a burden and were to find that in this case it was more, it might be wise for us to say that 10 is so that the argument for qualified immunity would not apply in a later case. Yes, Your Honor. Is it your point that qualified immunity can't be applied because there's a clear law that he's entitled to his religious, to the considerations, and he's entitled to have a support substitute in every case, and that's clear? So therefore, that much is very clear, even though the question of whether it arises to a substantial burden, that's kind of a different question. They wouldn't know when they've substantially burdened his religion, but they do know that they're violating his rights. So under those circumstances, I suppose you could argue that there's no qualified immunity defense here. Yes, Your Honor, and we did put forth that in our reply brief, that the qualified immunity defense does not apply in this case. Thank you, Your Honor. We'll hear from your colleague. Yes, Your Honor. May it please the Court. My name is Allison Thompson, and I also represent Appellant Brandon. In addition to Brandon's free exercise claim, he also filed a viable retaliation claim that shows how defendants retaliated against him for filing an increasing number of grievances. First, very briefly, the first two elements of a retaliation claim are not in dispute here. Brandon engaged in protected conduct by filing at least 41 grievances, and he satisfied the second element by alleging three different forms of adverse action that were sufficient to chill an inmate of ordinary firmness. What is in dispute here is the third element, whether Brandon has sufficiently shown a causal connection between his protected conduct of filing grievances and the defendant's adverse action, which included intentionally placing pork into his meals, improperly removing him from his medical diet for seemingly pretextual reasons, and intentionally exposing him to assault from another inmate. And there's two ways that this causal connection is proven, both of which are found in this record. First, through a temporal proximity between these events. The problem with the temporal proximity is that there are so many grievances for so many different things that it's hard to know what is temporal. You know, if you grieve one time and then something happens, the temporal proximity is there, but if you are grieving all the time and then after one of these grievances something happens, it's a little harder to say that it was because of a grievance that that happened. Why don't you just pick the latest one? Your Honor, surely Mr. Brandon was an ardent defender of his rights, and he filed many grievances. However, looking to his entire period of incarceration, these grievances aren't evenly distributed. There is a certain period of time, beginning in early October of 2012, where the grievances spike, reaching an absolute peak. For example, the period of October 10th through 17th, Brandon filed six grievances in that seven-day period. And it's where his grievances begin to reach a maximum that these adverse actions begin to be seen in this record. For instance, after this week of six- Can an inmate file too many grievances? I mean, it gets to the point where, you know, it may be abusive. Your Honor, Mr. Brandon continued to grieve because his grievances remained unaddressed. He continued to receive meals that did not comport with his religious diet or his medical diet, and some of the grievances were, in fact, about the fact that none of the previous grievances had even gone addressed. And certainly, Mr. Brandon did file many grievances, and this seemingly annoyed the staff of Clinton County Jail, who began to retaliate against him for engaging in this conduct. This can be seen on October 15th. Brandon threatened to escalate his grievances to the next level when he asked for the contact information for outside attorneys and the Citizen Review Board. We interrupted you. You said that there were two reasons, one, the proximity of the grievances and something else. And perhaps you'll want to move to that something else, since you interrupted me. Yes, Your Honor. The second way is through direct showing of retaliatory animus, which in this record is evidenced through statements made by employees of Clinton County Jail against Brandon. And these statements are detailed on pages 12 through 13 of Brandon's Supplemental Response Memorandum at Law. But just to highlight a few, on one occasion, Kinter told Brandon, you can starve for all I care, since you want to nitpick and complain about everything. You'll get what we give you. Additionally, Clancy had told Brandon that if he grieved another tray, she would lock his ass up and send him to solitary confinement. And finally, on Christmas, after Brandon, who at this point, it is undisputed that the entire staff knows he is a Muslim, Brandon was served pork in the form of ham. And when he grieved that tray, someone asked Brandon, where's your holiday spirit? The temporal proximity, in addition to these direct statements showing animus, clearly demonstrates that Brandon was retaliated against for filing many- Was there an additional one also when he was put in the vicinity of the other inmate, that some statements were made at that point? Yes, Your Honor. That incident, Brandon was told to collect the tray from another inmate who was known to be violent and somewhat erratic. That inmate spat on Brandon, and when Brandon complained, Officer Blaze laughed at him and said, come on, Brandon, you know you had that coming. Further, again, demonstrating that Officer Blaze sent Brandon on that task knowing full well what was going to happen. Was it a matter that the other inmate didn't do anything terribly serious? He spat on him, that's not nice, but it isn't a catastrophe. Does that matter in terms of the retaliatory intent of putting a violent other inmate there? Your Honor- I mean, do we look there to the degree of adverse action, or do we look to the fact that somebody who was likely to do something of that sort did it? The latter, Your Honor, and the statements from Correction Officer Blaze demonstrates that he knew something was going to happen. Maybe he didn't precisely know it would be this inmate spitting on Brandon, but he sent Brandon to collect that tray knowing something was going to happen. Thank you. Thank you. Thank you. The other side. May it please this Court, my name is Corey Ruggiero, Johnson and Laws, Attorney for the Defendant Appellants, save Dr. Glenn Schreier. Your Honors, what this appeal boils down to is what is and what does not suffice to defeat a motion for summary judgment. What plaintiff has done and what plaintiff has not done, and more particularly, whether plaintiff has demonstrated through evidence in admissible form the existence of a genuine dispute of material fact to defeat defendant's motion for summary judgment. At the outset, I think it's important to note some key fundamental premises. Don't we have to take the facts to the light, most favorable to the non-movement? Yes, and the key word being there, facts, Your Honor. Plaintiff must demonstrate what is fact through admissible evidence. What about the 63 meals? Is that a fact? Isn't that a fact? It is not a fact. Why not? Because it's based upon something that has not been established through admissible evidence. My understanding was that it was understood that pork was served 63 times between March and September. Just because something is served to the general prison population does not ensure that it was actually served. Was he getting special veggie meals during this period of time? I believe there was an indication. There's some evidence that he was given some breaks. Yes. But his pleadings are that he was basically routinely denied, was given pork during this period. And, Your Honor, that leads me to what I was about to say about a fundamental premise. To defeat a summary judgment motion in this court, it's been recognized repeatedly that  sworn affidavit that is not inconsistent, despite what you say, is not inconsistent with anything he said before. Before he said more generally, but he didn't have the menus, and so without the menus, how could he tell the number of times? So there's nothing inconsistent about the sworn affidavit. And as I suggested to opposing counsel, the fact that the kitchen did not know that he was a Muslim supports the fact that if everybody was being fed pork, he would be being fed pork too. Because if a kitchen didn't know, then it's likely that he was. That may speak to intent, that may speak to other things, but it certainly supports his sworn statement that he got served pork. So I don't quite understand where, I don't quite understand your argument that suggests that it isn't sufficiently established that he was served pork. For summary judgment, where we take the facts most likely to be on his side. And I do understand that, Your Honor, but that does not relieve even a pro se litigant of the obligation to conduct meaningful discovery to establish a fact. Plaintiff has failed, otherwise it renders the whole process meaningless. I don't quite understand what you ask him to do more to create a material question of fact. He swears that he was served pork on numerous occasions. It is shown on the record that pork was served to the general population. It is conceded or stated as an affirmative defense, actually, that the kitchen didn't know that he wasn't supposed to have gotten pork. Why isn't that enough to establish as a fact that he got served pork? Then the question of whether it was intentional or the other things may be in doubt, but I'm on that issue, I don't know how you'd expect somebody to do more. Well, Your Honor, I think it's illustrated by the fact that subsequent to his deposition where he couldn't remember just about anything about what he consumed, despite having made allegations as to perhaps four incidents in his complaint, he suddenly had amnesia as to any incidents, not even a single recollection of one incident where he was specifically served pork. Now come summary judgment time, he suddenly has this miraculous recovery of memory. The complaint preceded his deposition. But what I'm getting to, Your Honor, is the fact that his opposition to the summary judgment, which is an entirely different document, specifically, whether or not it's inconsistent or directly contradictory, it still does contradict his selective amnesia at the time of his deposition. He hadn't seen a menu. So without seeing a menu, how would he know which times he was served pork and which he was not? He says he was served pork. You ask him when, and he says, I don't really know. And then he sees menus, and he says, vista, vista, now you may believe it or not, that's another matter, but that's just what material questions. As a fact, the jury or a fact finder may not believe him, but it isn't inconsistent to say I don't remember when until I see something that helps. I mean, that isn't just something that aged people like me have trouble doing. Yes, I understand your position, Your Honor, but it doesn't save him from the fact that he couldn't remember a single incident. That's a basis for cross-examination at trial, perhaps, but he submitted sworn statements through his complaint that he was served pork. He filed grievance in saying I was served pork. Those are all, that's all evidence that's in the record. And there were multiple grievances in which he complained about being served pork. The menus show that pork was served. Which one of those, to the extent that the grievance refers to a specific meal, would be relevant on the factual question? Well, I would submit that an open-ended statement based upon saying I looked at a menu and I see 63 meals and say. When you look at it all together, isn't there evidence in the record from which a jury could find that he was indeed served pork on multiple occasions? Your Honor, again, I would submit to you that it's stated in a conclusory fashion without the development of any evidence through. He had a, he's obviously experienced, is documented by his numerous docket entries on the record. He is experienced and he did serve various discovery demands. He was perfectly capable of getting this testimony if he wanted to to support his basis. But he did not do so. Instead, he states in conclusory fashion, this is what happened. And I would submit to you today that that's insufficient to defeat a motion for summary judgment. Anything else? You want to talk about the retaliation at all? Yes, Your Honor, if I may. I think it bears mentioning right at the outset is that there is no evidence that the plaintiff was actually retaliated against. He was not harmed. He was not disciplined. A review of the grievances shows that if he was provided with any noncompliant meal, it was either replaced or it was confirmed that whatever he subjectively believed to be a pork product was in fact not a pork product. As the- I find a number of statements that could be construed as direct evidence of intent to retaliate. Is that not in the record? I don't believe so. Again, this goes back to whether or not this is an evidence in admissible form which he developed through discovery versus a conclusory self-serving affidavit. He says someone said X to me. Is that not evidence? Pardon, Judge? If he says under oath, a corrections officer said X to me, is that not evidence? It's evidence, but is it a conclusion? Is it self-serving? Yes. It might be self-serving, but it's coming from his- it's sworn testimony through the affidavit, through the complaint. And again, Your Honor, I think the overarching theme here is whether or not this was a conclusory self-serving affidavit offered- I'm sorry, Your Honor. In most summary judgment situations all over about anything else where somebody claims that they were discriminated against on the basis of race, you know, completely different type of case. But the cases we get all the time, what we have is somebody swearing that their employer or their supervisor said to them X. And that, if it is sworn to and is not contradicted by something else they have said before, is enough to get by. So, unless in a prisoner situation we require more than this sworn affidavit, you'd be asking us to do something very different from what we do in other cases. But, Your Honor, I would submit that the summary judgment standard at the summary judgment stage is a little different. What might suffice at the pleading stage- No, no, I'm talking about summary judgment. I'm talking about summary judgment in a typical Title VII discrimination case where we have somebody saying that supervisor said this to me, which was a racial or ethnic or age discrimination thing. And we regularly say that that's enough. I mean, there are hundreds of cases. So, I'm puzzled by your saying that a sworn affidavit in this case is not enough. Well, Your Honor, I think it's the intent behind the affidavit. This would open up Pandora's box. Anytime somebody raises an issue in support of a summary judgment motion, I can manufacture any fact I want for the purpose of defeating that motion. Is that not correct? Of course, that's rhetorical, Your Honor. I think that would set a dangerous precedent here. I think that precedent, dangerous as it is, has been set, had followed any number of times. But where somebody actually swears something to a fact, that's enough unless it contradicts a prior statement that this person has made. And I just may be reading the cases differently. I'll have to go back and re-read them. It's possible that I am as well, Your Honor. You were saying that there weren't adverse actions, but they point to the inclusion of pork, the removal of his medical diet, and the exposure to this rather peripatetic other inmate who was somewhat dangerous. And so why isn't that sufficient for adverse actions? Again, Your Honor, without sounding like a broken record here, I think this all goes back to the fact of this is a bare conclusory allegation. There's been no meaningful development of evidence to support these allegations. Again, that could allow anyone to say anything to defeat a summary judgment without admissible evidence. Thank you. We'll hear the rebuttal. Thank you, Your Honor. One quick point, Your Honors. As to the qualified immunity. I agree that your client didn't take meaningful discovery here. I mean, that's a weak point in your side, right? The fact that your client did not really take meaningful discovery and depositions and nail down a lot of these facts? Your Honor, the dispute over the verified complaint that this court seems to be discussing with opposing counsel, this court's precedent in Colon versus Coughlin states that the verified complaint is an affidavit for summary judgment purposes. I agree. So your answer to me is, yeah, he didn't. He blew that. But he's got the verified complaint. Yes, Your Honor. And as to the qualified immunity discussed earlier, with the burden of the 10 meals, the substantial burden has been clearly established as early as cases of Ford, McEachin, and also Coughlin, that even a small number of meals can result in a substantial burden. Thank you, Your Honors. Ms. Thompson. Your Honors, unless the court has any further questions, I will waive my rebuttal. Thank you. Thank you. We'll reserve decision. The remaining case and motions are on submission. Accordingly, I'll ask the clerk to adjourn. The court is adjourned.